## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JULIO GARCIA, IV,

      Petitioner,

v.                               Case No. 8:17-cv-2374-T-KKM-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

### ORDER

Julio Garcia IV filed a timely[1] petition under 28 U.S.C. § 2254 challenging his state convictions. (Doc. 6). Having considered the petition (*id.*), the supporting affidavit (Doc. 7), the response (Doc. 18), and the reply (Doc. 23), the Court denies Garcia's petition. Furthermore, a certificate of appealability is not warranted.

## I.   BACKGROUND

### A.   Procedural History

The State of Florida charged Garcia with aggravated battery with a deadly weapon on Jesus Rivera (Count One); aggravated battery with a deadly weapon on

---

[1] Respondent concedes that Grounds One through Eight are timely, but contends that "Grounds nine and ten raise claims that were not argued below and are procedurally barred" and that because "the claims cannot now be raised the State courts, the claims are also untimely." (Doc. 18, p. 5). A petitioner's inability to return to state court to raise previously unpresented claims renders those claims procedurally defaulted, rather than untimely. The Court finds the amended petition timely.

Justin Hageman (Count Two); and aggravated battery with a deadly weapon causing great bodily harm on Tyson Dunlap (Count Three). (Doc. 22, Ex. 1). A jury convicted Garcia as charged of Counts One and Three and acquitted him of Count Two. (Doc. 22, Ex. 2). The state court sentenced Garcia to consecutive terms of 15 years in prison. (Doc. 22, Ex. 3). The state appellate court per curiam affirmed the convictions and sentences. (Doc. 22, Ex. 7).

Garcia moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 22, Ex. 9). The state court ordered the State to respond to one claim and summarily denied all other claims. (Doc. 22, Ex. 10). After the State responded, Garcia moved for leave to amend his postconviction motion and raise new claims. (Doc. 22, Exs. 11, 12). The state court granted his motion. (Doc. 22, Ex. 14). When the court did not receive a timely amendment, it entered a final order denying Garcia's Rule 3.850 motion. (Doc. 22, Ex. 16). Garcia filed a motion for rehearing, contending that he had timely filed an amendment. (Doc. 22, Ex. 17). The state court denied Garcia's motion for rehearing. (Doc. 22, Ex. 18). The state appellate court per curiam affirmed the denial of relief. (Doc. 22, Ex. 22).

Garcia also filed a petition under Florida Rule of Appellate Procedure 9.141(d) alleging ineffective assistance of appellate counsel. (Doc. 22, Ex. 26). The state appellate court summarily denied Garcia's Rule 9.141 petition. (Doc. 22, Ex. 28).

### B.       Factual Background[2]

Two groups of men spent the evening of January 16, 2013, at Brew Hounds Sports Bar in Auburndale, Florida. Garcia was at the bar with his friends Justin Griffin and Armando Tafaro and his cousin Angelo DeJesus. Tafaro drove to the bar in his Chevrolet Camaro. The second group consisted of friends Tyler Dunlap, Justin Hageman, and Jesus Rivera.[3] Dunlap drove to the bar in his Dodge Challenger.

The two groups did not interact inside the bar. Later, in the parking lot, some of the men began talking about racing the Camaro and the Challenger. The discussions became heated and, by the end of the incident, Dunlap, Hageman, and Rivera were all injured. Hageman suffered a cut to the back of his head, requiring nine stitches. Rivera was cut on his arm and across his face, requiring forty-two stitches in total. Dunlap was stabbed in the torso, causing a punctured lung that required surgery. At trial, the State and the defense presented different versions of the events leading to these injuries.

### 1.    State's Version

The State presented evidence that, when Dunlap, Hageman, and Rivera left the bar, they saw Garcia, Tafaro, and Griffin standing outside. Dunlap walked over to his car. Hageman, Rivera, Garcia, and Tafaro began talking about the cars. Griffin hung back behind Garcia and Tafaro and did not say anything. As the men began to discuss

---

[2] The factual background is based on the trial transcript and appellate briefs.

[3] Rivera is referred to in the record as both "Jesus" and "Jesse".

racing the cars and how much they would wager on the outcome of a race, the conversation became more intense and turned into "trash talking." Garcia was standing across from Rivera, and Tafaro was standing across from Hageman.

The State presented evidence that Garcia either pushed or punched Rivera. Rivera pushed Garcia back. Dunlap saw Garcia holding a knife. Garcia swung at Rivera and Rivera put his hands up. After a matter of seconds, Rivera grabbed his face and walked towards Dunlap's car, where he lowered his hands to reveal a large cut across his face and also a cut on his arm. Rivera then proceeded to his truck to get a towel.

As Garcia and Rivera's confrontation became physical, Tafaro used his belt and belt buckle to hit Hageman. Tafaro and Hageman began fighting. Around that time, Dunlap saw Garcia approach Hageman and hit Hageman "in his back." (Doc. 22, Ex. 31, Vol. II, p. 179). Hageman, holding his head, came up to Dunlap, who observed that Hageman's shirt was bloody. Hageman was lapsing in and out of consciousness but could tell he was bleeding.

Tafaro then swung the belt and belt buckle at Dunlap. Dunlap grabbed the belt away from Tafaro, who tackled Dunlap and the two began "rolling around" in the parking lot. (Doc. 22, Ex. 31, Vol. II p. 182). They ended up back on their feet wrestling but neither could break free. Dunlap saw Garcia approaching him with a knife and was stabbed and collapsed near his car. Garcia, Tafaro, Griffin, and DeJesus left the bar in Tafaro's Camaro.

Dunlap stated that he had a pocketknife from work on him, but did not use it. Neither Rivera nor Hageman had a weapon. Kaitlyn Hobbs, a manager at the bar, testified that when she heard a commotion outside in the parking lot, she opened the door and saw Garcia driving the Camaro away from the bar. She did not see a pool cue outside or see anyone with a pool cue. Dunlap, Rivera, and Hageman likewise testified that they did not see a pool cue. As Garcia and his acquaintances drove away in Tafaro's car,[4] Hageman wrote down the license plate of Tafaro's car using soap stone he had in his work clothes, which he was still wearing.

2.   The Defense's Version

Garcia argued at trial that he acted in self-defense. He testified that he and Tafaro were trying to deescalate the situation and leave, but that the other group was aggressive and intimidating. Griffin testified that one member of the other group pushed Garcia several times, that another member "started going for" Tafaro, and that the third person went back into the bar and retrieved a pool cue before returning to the parking lot and fighting with DeJesus. (Doc. 22, Ex. 31, Vol. IV, p. 458). Griffin conceded though that, when he made a statement to police two days after the incident, he did not mention a pool cue.

---

[4] Hageman testified that a fourth person, apparently Angelo DeJesus, was far away from the others and that he only saw this person yelling and running past him before the Camaro left.

5

Griffin denied ever seeing Garcia with a knife during the fight, but acknowledged that Garcia carries a knife and that Garcia had his knife on him that night. Griffin testified that Garcia later—when the group was returning to Garcia's home from the bar and discussing what happened—stated that he pulled out his knife because he did not know whether anyone in the other group had a weapon.

Garcia testified at trial that after the conversation became acrimonious, Garcia called Hageman a racial epithet and that this offended Hageman. Garcia stated that, at that time, Rivera either punched or pushed him and that he saw Hageman running towards him. Afterwards, he moved past Hageman and picked up a knife that was on the ground. Garcia testified that he did not have his knife that night.

According to Garcia, Hageman ran over and swung a pool cue at him and "that's how [Hageman] got cut in the back of the head." (Doc. 22, Ex. 31, Vol. IV, pp. 518-19). Garcia testified that after Rivera tried to punch him again, he cut Rivera in the face. Then Rivera "attacked me again. That's how . . . he got sliced in the shoulder." (*Id.*, p. 519).

Garcia also testified that he observed Dunlap fighting with Tafaro. At one point, he saw Dunlap straddling Tafaro and beating Tafaro with the belt. Per Garcia, he stabbed Dunlap because he was trying to protect Tafaro; he meant only to "cut" Dunlap and did not realize that he had stabbed Dunlap. Garcia admitted that he did not provide all the details of the altercation between Dunlap and Tafaro in his interview with police,

6

which was played for the jury. According to Garcia, he withheld some information because he was scared during the interview.

Garcia denied telling Griffin that he had cut the victims with his knife. During his police interview, Garcia stated that he dropped the knife on the ground near the Camaro and that the knife was still in the parking lot when he left. Garcia testified that when they returned to his home, he went to sleep and did not participate in any further conversation about what had happened. Garcia maintained that he never wanted to become involved in the incident and that, from the beginning, he simply wanted to go home. Garcia remained constant at trial that he used the knife to protect himself and Tafaro.

## II.   STANDARDS OF REVIEW FOR A SECTION 2254 APPLICATION

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA may be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's

application of clearly established federal law is objectively unreasonable," as "an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The State may contest "the presumption by showing that the

unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he shows "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner shows prejudice by proving that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A

'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

### III.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD</u>

Garcia brings several claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   DISCUSSION

### A.   Ground One

Garcia contends that the trial court erred in denying his motion for new trial, filed under Florida Rule of Criminal Procedure 3.600. In the motion, Garcia alleged that "[t]he verdict is contrary to the weight of the evidence, to wit: the Defendant presented a case of justifiable use of deadly force and the testimonial evidence supported this defense." (Doc. 22, Ex. 33, Motion for New Trial).

12

Rule 3.600(a) permits the granting of a new trial when a verdict is against the weight of the evidence. "[T]he test is the weight, as distinguished from the sufficiency, of the evidence. Weight 'is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" *State v. Shearod*, 992 So. 2d 900, 904 (Fla. 2d DCA 2008) (quoting *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981)). Under Florida law, a motion for new trial is meant to provide a "safety valve" when technically sufficient evidence proves the criminal charge but the weight of the evidence does not appear to support the verdict. *Id.* at 905. "[T]he appropriate function of the trial court in deciding a motion for new trial which alleges that the verdict is contrary to the weight of the evidence" is to "weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror." *Moore v. State*, 800 So. 2d 747, 749 (Fla. 5th DCA 2001) (citation omitted). The trial court denied Garcia's motion without analysis. (Doc. 22, Ex. 33, Order Denying Defendant's Motion for New Trial). Garcia argues that the state court erred in not "conduct[ing] a thorough weighing of the testimony and evidence" because "the weight of the evidence is of such a nature that it supported acquittal." (Doc. 6, p. 7).

Whether the state court erred in deciding the motion for new trial under the weight of the evidence standard applicable to a Rule 3.600 motion is a question of state law. Thus, Garcia's claim is not cognizable on federal habeas review. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders

a State's criminal judgment susceptible to collateral attack in the federal courts.") (italics in original). Indeed, a federal habeas court cannot grant relief on the basis that a state court jury verdict is contrary to the weight of the evidence. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]").

Garcia's characterization of the claim as involving violations of his federal rights to due process and a fair trial does not affect the Court's determination that his claim is not cognizable. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (stating that "a habeas petition grounded on issues of state law provides no basis for habeas relief. . . . This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).

The Court notes that in his federal habeas petition, Garcia argues that his "Fourteenth Amendment rights to due process and a fair trial . . . were violated when the state courts denied relief based on Petitioner's challenge to the sufficiency of the evidence." (Doc. 6, p. 4). But the sufficiency of the evidence and the weight of the evidence are distinct legal questions. Because the gravamen of Garcia's claim concerns the denial of his Rule 3.600 motion for a new trial under the weight of the evidence standard, the Court does not construe Ground One to raise a distinct challenge to the

sufficiency of the evidence. Even granting Garcia that broad reading of Ground One, Respondent correctly contends that such a claim is unexhausted in state court.

Garcia did not expressly challenge the sufficiency of the evidence on appeal. No part of Garcia's argument alleged with specificity that the State's evidence was legally insufficient to prove his guilt beyond a reasonable doubt. (Doc. 22, Ex. 5, pp. 24–42). Instead, he argued that the weight of the evidence provided "greater support for acquittal than guilt" under the Rule 3.600(a) standard. (Doc. 22, Ex. 5, p. 24). As Garcia did not allege that the State's evidence was insufficient to convict him, Garcia failed to fairly present to the state appellate court a sufficiency of the evidence claim, under either state or federal law.[5]

Accordingly, any federal sufficiency of the evidence claim is unexhausted. Garcia cannot now return to state court to present the claim in a successive appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that an appeal must be taken within 30 days of the date a sentence is rendered). Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Nor has Garcia established that an exception applies to excuse the default. *See id.* Consequently, any independent federal claim challenging the sufficiency of the

---

[5] Garcia cites federal-court decisions holding that proof of a criminal charge beyond a reasonable doubt is constitutionally required. He also makes a cursory reference to the Fourteenth Amendment. But, as explained, Garcia failed to expressly argue that the State's evidence was legally insufficient to support his convictions. *See, e.g., McNair v. Campbell*, 416 F.3d 1291, 1303–04 (11th Cir. 2005) (holding that a petitioner's citation to a single federal district court decision and a passing reference to constitutional amendments were insufficient to satisfy the exhaustion requirement).

State's evidence is barred from federal habeas review. Garcia is not entitled to relief on Ground One.

### B.     Ground Two

Garcia alleges that trial counsel was ineffective in not filing a motion asserting immunity from prosecution under Florida's "Stand Your Ground" law. *See* § 776.032(1), Fla. Stat. (providing that a person who uses force as permitted by Florida law "is immune from criminal prosecution."). The state court denied this claim when Garcia raised it in his Rule 3.850 postconviction motion. The court ruled that even if Garcia's counsel filed a pretrial "Stand Your Ground" motion, Garcia would not have received immunity because testimony at trial established that Garcia was the aggressor in the incident and that he "escalated the situation by brandishing a knife." Based on multiple witnesses' testimony about Garcia's actions during the altercation, the state court concluded that a pretrial motion to dismiss based on "Stand Your Ground" would not have been granted. As a result, the court concluded that Garcia failed to prove deficient performance or prejudice. (Doc. 22, Ex. 10, p. 109) (court's record citations omitted).

Garcia is not entitled to habeas relief on Ground Two. The underlying question of whether a motion to dismiss under Florida's Stand Your Ground law would have succeeded is a matter of state law. This Court must defer to the state court's determination that a motion to dismiss would not have been granted. *See Bradshaw v.*

*Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).

Because the state court has determined that a motion to dismiss would not have been granted, this Court cannot reevaluate a motion's chance of success under Florida law. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Therefore, this Court cannot conclude that counsel was ineffective in not filing a motion to dismiss, or that Garcia suffered prejudice as a result of counsel's omission. Garcia has not met his

burden of showing that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.[6]

Within Ground Two, Garcia appears to argue that the postconviction court erred in not granting him an evidentiary hearing or obtaining a statement from trial counsel prior to denying his claim. These claims are not cognizable on federal habeas review. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Accordingly, Garcia is not entitled to relief on Ground Two.

## C.    Ground Three

Garcia alleges that trial counsel was ineffective in not impeaching prosecution witnesses Justin Hageman and Jesus Rivera with their prior inconsistent statements. (Doc. 6, p. 13). Garcia contends that the alleged inconsistencies "would have demonstrated their dishonesty on matters critical for the jury to determine whether Petitioner was acting in self-defense" and "was paramount to Petitioner in order to

---

[6] Garcia argues that the state postconviction court failed to consider his trial testimony and his version of events in its order. Garcia's argument goes to whether the state court correctly applied state law, which the Court may not determine on habeas review.

show that he and Tafaro were outnumbered and over matched, thus necessitating justifiable use of force." (Doc. 6, pp. 13, 14).

      1.    <u>Justin Hageman</u>

          a.    <u>Statements about Dunlap</u>

Garcia asserts that Hageman made inconsistent statements about whether he knew who Tyson Dunlap was fighting. Garcia contends that Hageman testified at his deposition that he could not remember who Tyson fought:[7]

Q.    Do you remember who Tyson was fighting?

A.    No.

(*See* Doc. 6, p. 14).

Garcia argues that the above testimony is inconsistent with Hageman's testimony at trial where Hageman said he could see Tyson fighting someone:

Q.    Okay. Are you kind of dazed or stunned?

A.    Yes, sir.

Q.    Do you see anybody? Do you see Tyson or do you see - -

A.    I see Tyson and that other dude fighting.

Q.    Sir?

A.    I see Tyson and another guy fighting.

---

[7] Transcripts of Hageman's and Rivera's depositions are not in the record before the Court. For purposes of reviewing Ground Three, the Court accepts Garcia's representation of the transcripts.

(Doc. 22, Ex. 31, Vol. II, pp. 227–28).

The state court found that Hageman's testimonies were not inconsistent. Instead, the state court found that the testimonies were vague because Hageman never said who he specifically saw fighting. (Doc. 22, Ex. 10, p. 111) (court's record citations omitted).

The state court did not unreasonably find that Hageman's deposition testimony that he did not know who Dunlap was fighting and Hageman's trial testimony that Dunlap was fighting "that other dude" or "another guy" were not inconsistent. Whether the statements were inconsistent involves an underlying determination of state law that this Court will not disturb on federal habeas review. *See Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) ("To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must also involve a material, significant fact rather than mere details."). Thus, Garcia has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.

### b. Statements about Whether Garcia Pushed Rivera

Garcia asserts that Hageman made inconsistent statements about whether he saw Garcia push Rivera. Garcia states that at his deposition, Hageman testified:

Q.    So you're saying you saw Mr. Garcia push.

A.    Jesse.

Q.    - - Jesse?

20

A.     Yes.

(*See* Doc. 6, p. 14).

It appears that the state court relied on the following portion of Hageman's direct

examination testimony, which Garcia did not cite in his Rule 3.850 motion:

Q. [ ] How did [the physical fighting] start?

A. It just kept escalating and you could tell that tempers were getting hotter. And then I seen the defendant go at Jesse and I seen the guy with the hat - -

Q. Let me stop you. The defendant go at Jesse?

A. Yes, sir.

Q. What did he do to Jesse?

A. I just seen him - - I thought he was hitting like a girl, like that. I didn't, you know - -

Q. Hitting - - hitting him like this, it looked like?

A. Well, I just seen him go like that. My attention was on the other guy.

Q. Okay. Because at the same time that that was happening, the other guy was doing what?

A. Taking off his belt.

(Doc. 22, Ex. 3, Vol. II, p. 225).

The state court determined that counsel was not ineffective in failing to impeach

Hageman based on these portions of the record:

Defendant . . . argues that Mr. Hageman in deposition says Defendant pushed Mr. Rivera but did not state this at trial. At trial Mr. Hageman

testified that the Defendant was going at Mr. Rivera "like a girl" and referenced some action that was not recorded. Again, the Court does not find that the inconsistency is so great that it would make a difference at trial.

(Doc. 22, Ex. 10, p. 111) (court's record citation omitted).

The state court did not unreasonably deny postconviction relief. Garcia has not shown a reasonable probability that impeaching Hageman with any inconsistency between the testimonies would have resulted in a different outcome. As the state court's order suggests, Garcia does not show that the statements were "materially different" or involved a "material, significant fact." *See Pearce*, 880 So. 2d at 569. Nor does Garcia demonstrate that impeaching Hageman would have damaged his credibility before the jury enough to change the outcome. Garcia has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim regarding Hageman.

The state court's order did not address the portion of Hageman's trial testimony that Garcia identified in both his Rule 3.850 motion and his federal habeas petition. Garcia claims that the following portion of Hageman's cross-examination testimony is inconsistent with his deposition testimony:

Q.   So the next thing you see as things are getting escalated, you're saying you saw Mr. Garcia swing a punch at Jesse?

A.   Step towards him and swing, yes.

Q.   All right. Did he ever push him?

A.     No.

Q.     No. So you never saw Mr. Garcia push yourself?

A.     No.

Q.     You never saw Mr. Garcia push Jesse?

A.     No, not that I recall, no.

(Doc. 22, Ex. 31, Vol. II, p. 242).

To the extent Garcia argues that counsel at this point should have impeached Hageman with his deposition, the Court concludes that Garcia has not established entitlement to relief under *Strickland*.[8] Garcia does not establish that counsel performed deficiently in not impeaching Hageman. While the testimonies contain conflicting statements as to whether Hageman saw Garcia "push" Rivera, Garcia does not establish that the kind of action Garcia took was a "material, significant fact" rather than a "mere detail[ ]." *Pearce*, 880 So. 2d at 569. Therefore, Garcia fails to show that impeaching Hageman when he made the challenged statement during his cross-examination was permissible under state law. *See Caruso v. State*, 645 So. 2d 389, 394 (Fla. 1994) ("It is well established that if a witness is cross-examined concerning a collateral or irrelevant

---

[8] The Court reviews de novo Garcia's ineffective assistance of counsel claim based on this portion of the record. Ordinarily, when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013). This presumption is rebuttable though, and de novo review of such a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]" *Id.* at 303. It appears that the state court overlooked Garcia's specific argument because the state court resolved his claim based on another part of the record that Garcia did not address.

matter, the cross-examiner must 'take' the answer, is bound by it, and may not subsequently impeach the witness by introducing extrinsic evidence to contradict the witness on that point.").

Even assuming that impeachment was appropriate, Garcia cannot establish prejudice under *Strickland*. Regardless of whether Hageman described Garcia's motion as a "push" or a "swing," he consistently testified that Garcia initiated physical contact with Rivera. Whether Garcia initiated physical contact—as opposed to the precise action he took in doing so—was critical to the State's evidence of guilt and to Garcia's theory of self-defense. Further, Garcia fails to show that impeaching Hageman would have impacted his credibility such that there is a reasonable probability of a different outcome. Given these considerations, and in the light of the totality of the State's evidence of guilt, Garcia has not demonstrated a reasonable probability of a different outcome at trial had counsel impeached Hageman as Garcia suggests. Garcia has not shown entitlement to relief under *Strickland*.

      2.    <u>Jesus Rivera</u>

Garcia argues that Rivera made inconsistent statements as to whether he raised the topic of money. Garcia contends that at deposition, Rivera testified:

Q.    Who brought the racing up?

A.    I don't remember. I don't remember who brought the racing up.

Q.    So it could have been you or it could have been Justin or Tyson?

A.      I don't think I did it. I don't think – I don't think Tyson would have because Tyson really doesn't talk about his car. He just brought the car to have the car. I mean it could have been – I mean I don't know. Really, don't know.

Q.      Okay. But someone – someone started the conversation about racing?

A.      Yes.

Q.      All right. And was money brought up?

A.      Yea, the money was brought up.

Q.      Who brought up the money?

A.      I actually brought up the money.

Q.      Okay what did you say?

A.      I said I'd bet a thousand bucks that Tyson's car would win.

(*See* Doc. 6 at 13).

Garcia claims that the following portion of Rivera's trial testimony was inconsistent with his deposition testimony:

Q.      [ ] [A]t some point you turned the tone of the conversation, right, to racing and money, right?

A.      No. I didn't.

Q.      You didn't?

A.      No.

(Doc. 22, Ex. 31, Vol. III, p. 292).

25

The state court rejected Garcia's claim that counsel was ineffective in not impeaching Rivera. The court found that Rivera's statements were not inconsistent because, in his deposition, Rivera said he did not know who first discussed racing, but he knew it was not him or Dunlap. At trial, Rivera said that everyone was talking about racing except Dunlap and that money was discussed and Rivera said he would place money on the race. Because the court found those statements not "truly inconsistent," Garcia failed to prove that he was prejudiced. (Doc. 22, Ex. 10, p. 111).

Garcia does not show entitlement to relief. Whether the statements were inconsistent is a determination of state law to which this Court must defer.

Moreover, the state court did not unreasonably conclude that Garcia failed to show prejudice as a result of counsel's performance even if it were deficient. Garcia does not demonstrate that the question of who began discussing money was a "material, significant fact" in this case. *See Pearce*, 880 So. 2d at 569. Nor does Garcia establish that impeaching Rivera on this matter would have so greatly impacted Rivera's credibility that there is a reasonable probability of a different outcome at trial. As Garcia has not established that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Three.[9]

---

[9] Garcia asserts that counsel's failure to impeach these witnesses was "compounded" by the prosecutor's statement during closing argument that the victims' testimonies were "consistent." (Doc. 6, p. 15). The prosecutor suggested that Garcia's trial testimony and statement to police contained inconsistencies, and stated "the three victims[] their testimony was consistent." (Doc. 22, Ex. 31, Vol.

### D.     Ground Four

Garcia argues that newly discovered evidence in the form of an affidavit from Armando Tafaro would result in an acquittal at a re-trial.[10] Tafaro's affidavit provides that the other group was aggressive and initiated physical contact and that Tafaro was being strangled. (Doc. 7, p. 2). Garcia contends that if the jury had heard this information, they "would have acquitted Petitioner on each and every count because of self-defense in every material respect." (Doc. 6, p. 18).

Garcia's newly discovered evidence claim is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (" '[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.' This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963)); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that

---

V, p. 623). Garcia did not raise these facts in support of his *Strickland* prejudice argument in his Rule 3.850 motion. (Doc. 22, Ex. 9, pp. 36–40). Accordingly, this aspect of the claim is unexhausted. *See Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (stating that the prohibition against raising an unexhausted claim in federal court extends to the broad theory of legal relief and the specific factual contention). Notwithstanding the lack of exhaustion and resulting procedural default, the Court finds that Garcia has not met his burden of showing that he was prejudiced by counsel's failure to object.

[10] Respondent misconstrues Garcia's claim as alleging ineffective assistance of trial counsel under *Strickland* for not calling Tafaro as a witness at trial. Garcia has not alleged ineffective assistance of trial counsel in Ground Four.

has emerged since the trial."); *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief."). To be sure, the Eleventh Circuit has repeatedly and recently held there is there is no federal "habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019) (internal quotation marks omitted).

Garcia contends that the state postconviction court violated his federal due process rights by denying his newly discovered evidence claim "without evaluation of the totality of the evidence." (Doc. 6, p. 17). This argument goes to whether the postconviction court properly applied a state law standard in reviewing Garcia's newly discovered evidence claim, as he argued on collateral appeal. (Doc. 22, Ex. 20, pp. 9–15).[11] This argument is not cognizable on federal habeas review, despite Garcia's framing it as involving a federal constitutional violation. *See Branan*, 861 F.2d at 1508. Accordingly, Ground Four warrants no relief.

### E.    Ground Five

---

[11] *See Jones v. State*, 709 So. 2d 512, 521–22 (Fla. 1998) (stating that to determine whether newly discovered evidence would probably produce an acquittal on retrial, the reviewing court must consider all newly discovered evidence that would be admissible, and evaluate the weight of the newly discovered evidence and the evidence adduced at trial) (citing *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991)).

Garcia argues that trial counsel was ineffective in failing to object to the State's use of a peremptory strike on prospective juror Maldonado—whom Garcia identifies as the only Hispanic person on the jury panel—and to request a race-neutral reason for the strike. The record shows that the State struck Maldonado without objection from the defense. (Doc. 22, Ex. 31, Vol. I, p. 98). A criminal defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986). Therefore, the exclusion of a juror because of race violates a defendant's federal constitutional right to equal protection. *Id.* at 86. Garcia claims that counsel's omission resulted in a violation of his right to equal protection and in the failure to preserve the claim for appeal.

The postconviction court found Garcia's ineffective assistance claim procedurally barred. (Doc. 22, Ex. 16, p. 175). That court determined that "counsel's failure to make a Neil objection is not cognizable as a Rule 3.850 claim" and cited two Florida appellate court decisions for support. (*Id.*). A petitioner's failure to comply with state procedural rules governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Caniff v.*

*Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

"[A] state court's rejection of a petitioner's federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691-92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). A rule must be firmly established and regularly followed by state courts to be considered adequate to foreclose review of a federal claim. *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

Respondent argues that Garcia's claim is procedurally barred from federal habeas review. Garcia contends that the state court incorrectly applied the state procedural bar. *See, e.g.*, *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (stating that a procedural default may occur "where the state court *correctly* applies a procedural default principle

30

of state law to arrive at the conclusion that the petitioner's federal claims are barred[.]")
(emphasis added). Garcia contends that he properly raised his ineffective assistance of
trial counsel claim in his postconviction motion. *See King v. State*, 211 So. 3d 866, 886–
87 (Fla. 2017) (discussing merits of a postconviction claim alleging ineffective assistance
of counsel in failing to preserve a challenge to a potential *Batson* violation); *Carratelli v.
State*, 961 So. 2d 312 (Fla. 2007) (same).

Presuming that Garcia is correct and that he is therefore entitled to a review of
his claim on the merits, he has not shown entitlement to relief. The state court further
addressed Garcia's ineffective assistance claim, finding that Garcia failed to show
prejudice under *Strickland*. Garcia does not show that the state court's ruling was
unreasonable under the AEDPA's deferential standard. The state court adopted and
incorporated the state's response, and agreed with the State's argument that Garcia's
claim should be denied. (Doc. 22, Ex. 16, pp. 174–75). In that response, the State argued
that Garcia failed to establish prejudice because he failed to show that a biased juror
served on his jury. (Doc. 22, Ex. 11) (state court record citations omitted) (emphasis in
original).

The state court did not unreasonably deny Garcia's ineffective assistance of trial
counsel claim on *Strickland*'s prejudice prong when Garcia did not show that an actually
biased juror served at his trial. *See King*, 211 So. 3d at 887 ("[W]hen considering the
failure to preserve a challenge to potential jurors in voir dire, the reviewing court should

focus on the defendant's trial, not his appeal. Under such circumstances, [the Florida Supreme Court] held that a defendant must show that biased juror served during the defendant's trial to satisfy *Strickland*'s requirement of showing a reasonable probability of a more favorable result.") (citations omitted).

While Garcia alleges that counsel's lack of objection resulted in the failure to preserve a potentially meritorious issue for appeal, the state court's ruling on the prejudice at trial, rather than any effect of counsel's performance on a later appeal, did not involve an unreasonable application of *Strickland*. *See Strickland*, 466 U.S. at 696 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable"); *see also Carratelli v. Stepp*, 382 F. App'x 829, 832 (11th Cir. 2010) (stating, in the context of a claim that trial counsel was ineffective in failing to preserve a *Batson* challenge by renewing the objection after raising it initially, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial[.]"). Garcia therefore fails to meet his burden under the AEDPA of demonstrating that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his ineffective assistance of trial counsel claim.

Finally, within Ground Five, Garcia appears to contend that the state postconviction court erred in not conducting an evidentiary hearing on this claim. This argument does not warrant relief. *See Carroll*, 574 F.3d at 1365; *Quince*, 360 F.3d at 1262. Accordingly, Ground Five warrants no relief.

### F.   Grounds Six and Seven

Grounds Six and Seven involve allegations of prosecutorial misconduct. In Ground Six, Garcia argues that trial counsel was ineffective in not objecting to the prosecutor's allegedly improper comments. In Ground Seven, Garcia argues that the prosecutor violated his federal constitutional right to a fair trial by making the allegedly improper comments.

### 1.   Law on Prosecutorial Comments

To obtain relief on a claim challenging the propriety of a prosecutor's statements, Garcia must demonstrate that the comments were both improper and prejudicially affected his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted). A defendant's substantial rights "are prejudicially affected [by improper prosecutorial comments] when a reasonable probability arises that, but for the remarks,

33

the outcome [of the trial] would have been different." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995) (citing *Kennedy v. Dugger*, 933 F.2d 905, 914 (11th Cir. 1991)).

A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole. *Id.*; *see also United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc).

As a general matter, a prosecutor may argue about a witness's credibility when such argument is based on the evidence adduced at trial. *See United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015) (stating that the prosecutor was permitted to argue that a defendant's denials of involvement were not credible when the prosecutor was urging the jury to draw certain conclusions from the evidence); *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009) (stating that the prohibition on vouching does not forbid prosecutors from arguing credibility). However, "[a] prosecutor is expected to refrain from offering his personal views on a defendant's guilt or on the evidence." *Rivera*, 780 F.3d at 1100; *see also Jackson v. State*, 89 So. 3d 1011, 1018 (Fla. 4th DCA

34

2012) (stating that "it is improper for an attorney to express a personal opinion as to the credibility of a witness" but that "an attorney is allowed . . . to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence.") (citations omitted).

Attorneys may comment on the evidence during their opening statements and closing arguments. Opening statements set out what the attorneys expect the evidence will show. *See United States v. Lizon-Barias*, 252 F. App'x 976, 978 (11th Cir. 2007) ("An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument."). And "the 'sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence.'" *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (quoting *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981)). A prosecutor may comment on the evidence and express the conclusions he contends that the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (finding that remarks were not improper when the prosecutor only "urged the jury to draw inferences from the evidence produced at trial."); *see also Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007) (stating closing argument is an opportunity for attorneys "to review the evidence and to explicate those inferences which may be reasonably drawn from the evidence."); *McArthur v. State*, 801 So. 2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing

argument by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

.          2.      Ground Six

In Ground Six, Garcia contends that trial counsel was ineffective in failing to object to the prosecutor's allegedly prejudicial comments and in failing to move for a mistrial based on the comments.

### a. Statements Concerning "Cut" Versus "Stab"

Garcia contends that the prosecution erroneously stated that Rivera and Hageman were stabbed, when in fact they were cut. (Doc. 6-1, p. 3).[12] Garcia also argues that the prosecutor intimated that Garcia stabbed more than one of the victims, when only Dunlap received a stab wound. (Doc. 6-1, p. 3). Garcia argues that these remarks were part of a prosecutorial "campaign throughout to overstate and mischaracterize the nature and severity" of the victims' wounds and suggested that he deliberately stabbed, rather than accidentally cut, the victims. (Doc. 6-1, pp. 3–4).

First, Garcia identifies the prosecutor's opening statement as problematic:

At the same time, the Defendant quickly comes up with a knife and slices Jesse in the face across the forehead and through the nose, stabs him in the arm, cuts him in the arm, very quickly. And he's doing it in this motion. (Indicates motion.) Very quickly, slicing, stabbing, cutting.

---

[12] Rivera testified that he received a cut to his face and right biceps. (Doc. 22, Ex. 31, Vol. III, p. 285). Hageman did not specify the nature of his injury, although he answered questions describing his wound as a "cut" without correcting that description. (Doc. 22, Ex. 31, Vol. II, pp. 235, 252).

(Doc. 22, Ex. 31, Vol. II, pp. 121–22).

Garcia also points to the prosecutor's closing argument:

Finally, today, he comes into court and he admits it, that he stabbed Tyson, he sliced Rivera's face, stabbed him in the arm, and cut Justin Hageman in the back of the head.
. . .

That's clear. He came in today and he finally admitted to you, yes. I cut and stabbed each of these three victims and it was against their will.

(Doc. 22, Ex. 31, Vol. V, pp. 622–23, 653).

In addition, Garcia notes that when the prosecutor cross-examined him, the prosecutor asked several questions that referred to Garcia having stabbed Rivera:

Q.   Okay. After you cut him he just stands there?

A.   He - - he was stood - - he was stunned. He stood there for a second.

Q.   Okay. Okay. Did you stab him and cut him in the arm then or was that later?

A.   I didn't - - I didn't stab anyone. I didn't attempt to stab anyone. I didn't - -

Q.   But you did, right?

A.   I didn't stab - - I did not stab - - I didn't stab Mr. - - Mr. Rivera.

(Doc. 22, Ex. 31, Vol. IV, pp. 587–88).

The state court found that counsel was not ineffective in failing to object because the prosecutor's mischaracterization of Rivera's arm injury as a stab rather than a cut was not prejudicial. And the state court found that the prosecutor's reference to Garcia

stabbing Rivera and committing multiple stabbings was not prejudicial because Garcia actually cut Rivera and Hageman and stabbed Dunlap. (Doc. 22, Ex. 10, p. 110) (state court's record citations omitted).

The state court did not unreasonably conclude that Garcia was not prejudiced by counsel's failure to object to any mischaracterization of the victims' injuries by the prosecutor. The jury heard the evidence, including the descriptions of the victims' wounds, and could independently assess the nature of the injuries based on the evidence. The jury was instructed that they were to look only to the evidence introduced at trial for proof of guilt, and that the attorneys' statements were not evidence. (Doc. 22, Ex. 31, Vol. II, p. 116; Vol. V, pp. 619, 663).

The jury is presumed to have followed these instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."); *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed."). Accordingly, Garcia fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

b. <u>Statements about Another Weapon</u>

Garcia identifies several remarks during the prosecutor's closing argument asserting that no one other than Garcia had a weapon. Garcia argues the remarks improperly stated the prosecutor's personal opinion that Garcia was not credible:

[Garcia is] the one that felt that a knife or some other weapon needed to be used, and that was before, even - - according with the Defendant's own statement, before anybody went and got a broken pool cue, which I suggest to you did not occur.

. . .

[T]hat was before any mention or any even possibility of any weapon, even an imagined weapon, was used against him.

. . .

I don't think there's any evidence that says he had to use that knife because somebody was using a knife against him or some other deadly weapon except for this story that we're hearing about the broken pool cue, which, again, I suggest to you that's all it is, is a story.

(Doc. 22, Ex. 31, Vol. V, pp. 621–22, 633–34).

The state court rejected Garcia's claim because it found that the prosecutor made reasonable inferences and argued facts in evidence. (Doc. 22, Ex. 10, p. 110) (state court's record citations omitted).

Garcia does not show that the state court unreasonably rejected his claim. Considered in context, the prosecutor's remarks concerned the plausibility of the self-defense theory. Garcia does not show any impropriety in the prosecutor's argument that conflicts in the evidence cast doubt on Garcia's version of events. *See Davis v. State*, 136 So. 3d 1169, 1203 (Fla. 2014) ("While a prosecutor may not 'ridicule or otherwise improperly attack the defense's theory of the case,' a prosecutor is permitted to suggest to the jury that 'based on the evidence of the case, they should question the plausibility of the defense's theory.'" (quoting *Valentine v. State*, 98 So. 3d 44, 55–56 (Fla. 2012)).

39

Garcia fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this part of his claim.

### c. Statements about Credibility of Defense Witnesses

Garcia contends that counsel should have objected to statements concerning the credibility of his testimony and Griffin's testimony. Garcia identifies the following portions of the prosecutor's closing argument:

> [Garcia] says that because it doesn't fit in with his events of what happened. Nothing fits in with the way he says anything happened.
>
> . . .
>
> Now, we can say, well, how did that happen? I would suggest to you - - I would suggest to you that they got together that night that's the one thing [Griffin] was truthful about.
>
> . . .
>
> The knife should be right there. Well that knife should have been - - if you believe [Garcia's] story.
>
> . . .
>
> [T]hey were in the front yard for an hour or two getting their story straight about the cue stick and about the knife and about - - but they didn't do a good job. They did not.
>
> And I suggest to you it happened neither way, neither the way the Defendant says it happened and not the way that his witness said that it happened.

(Doc. 22, Ex. 31, Vol. V, pp. 627–28, 629, 631).

The state court denied Garcia's claim because it found that the prosecutor argued facts in evidence and inconsistencies in witness testimony. (Doc. 22, Ex. 10, p. 110) (state court's record citations omitted).

Garcia does not demonstrate that the state court unreasonably denied his claim. Garcia has not established that the prosecutor's remarks were impermissible expressions of personal opinion. The state court did not unreasonably conclude that the prosecutor appropriately argued how the jury should interpret and evaluate conflicts in the evidence. These conflicts included inconsistencies between the State's evidence and the defense evidence, as well as conflicts between Griffin's testimony and Garcia's testimony. Moreover, as addressed, a prosecutor is not prohibited from commenting on witness credibility while arguing about conclusions the jury should draw from the evidence. *See Rivera*, 780 F.3d at 1100; *Jackson*, 89 So.3d at 1018. Garcia does not show that any comment went beyond the bounds of permissible argument into personal opinion. Therefore, Garcia does not establish entitlement to federal habeas relief on this issue.

### d. Ineffective Assistance in Not Moving for Mistrial

The state court did not address Garcia's argument that counsel was ineffective in not moving for a mistrial based on the prosecutor's comments. The Court presumes that the state court ruled on the merits of this claim. *See Johnson*, 568 U.S. 289. Garcia does not show that the state court unreasonably applied *Strickland* or unreasonably

determined the facts in denying the claim. Whether a mistrial was warranted is a matter of state law and this Court must defer to the state court's implicit resolution of this state law question. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354–55. Garcia has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.

Alternatively, even assuming that the state court simply overlooked Garcia's claim, leading to *de novo* review, Garcia has failed to show entitlement to relief under *Strickland*. In Florida, a mistrial "is warranted only when the error is so prejudicial that it vitiates the entire trial." *Somers v. State*, 162 So. 3d 1077, 1079 (Fla. 5th DCA 2015). Garcia has failed to show a reasonable probability that a mistrial would have been granted based on the identified comments. For the same reasons discussed above, Garcia does not show that the comments were improper. Nor does he show that, even if the comments were improper, they were "so prejudicial" that they "vitiate[d] the entire trial." *Id.* Thus, he has not shown that counsel performed deficiently in not moving for a mistrial, or that he suffered resulting prejudice. Ground Six warrants no relief.

3.  Ground Seven

Garcia argues that the prosecutor committed misconduct by making improper remarks, resulting in a violation of his federal constitutional right to a fair trial. (Doc. 6-

1, p. 6). Garcia identifies the same statements that he raised in Ground Six. (*See* Doc. 6-1, p. 7).

Garcia alleged in his Rule 3.850 motion that the prosecutor committed misconduct, but he did not allege a violation of his federal constitutional rights. (Doc. 22, Ex. 9, pp. 27–32). Therefore, Garcia did not exhaust a federal prosecutorial misconduct claim. Because Garcia cannot return to state court to present the claim, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Garcia has not established that an exception applies to overcome the resulting procedural default. *See id.* Notwithstanding the default, Garcia fails to show entitlement to relief on his stand-alone prosecutorial misconduct claim. For the same reasons discussed in Ground Six, Garcia fails to show that the arguments were improper. Further, he does not establish that, even if improper, when considered in the context of both the entire closing argument and the entire trial, they so infected the trial with error of constitutional dimension as to warrant relief. *See Darden*, 477 U.S. at 181. Garcia is not entitled to relief on Ground Seven.

## G.    Ground Eight

Garcia argues that appellate counsel was ineffective in not arguing that the trial court erred in refusing to provide a jury instruction on the justifiable use of non-deadly force. Respondent contends that this claim is unexhausted because Garcia did not fairly present the federal nature of the claim to the state court in his petition alleging

ineffective assistance of counsel under Florida Rule of Appellate Procedure 9.141. Respondent's argument is not convincing. In his Rule 9.141 petition, Garcia cited *Strickland* and clearly alleged that his appellate counsel was ineffective. (Doc. 22, Ex. 26). Garcia therefore fairly presented the federal claim of ineffective assistance of appellate counsel to the state appellate court.

Notwithstanding its preservation for federal review, Garcia's claim fails. The question of whether Garcia would have prevailed on appeal had appellate counsel challenged the trial court's omission of the jury instruction rests on an application of state law.[13] This Court must defer to the state appellate court's determination that Garcia would not have succeeded on appeal had appellate counsel raised this state law issue. *See Pinkney*, 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55.

Garcia fails to show that the state court's rejection of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Accordingly, he is not entitled to relief on Ground Eight.

### H.    Grounds Nine and Ten

---

[13] In Ground Eight, Garcia contends that he would have prevailed on appeal had appellate counsel raised the question of the trial court's refusal to provide a jury instruction on non-deadly force. In Ground Nine, Garcia makes the contradictory claim that trial counsel was ineffective in not objecting when the trial court refused to give the instruction, thereby failing to preserve the matter for appeal. In other words, Garcia's argument in Ground Nine recognizes that his trial counsel argued for a jury instruction on non-deadly force—an argument Garcia says in Ground Eight trial counsel never put forth. *See Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978) ("Where the alleged error is giving or failing to give particular jury instruction, we have invariably required the assertion of a timely objection."). Regardless of whether the state appellate court's ruling involved the merits of the jury instruction question or was based on a lack of preservation, the ruling turned on an application of underlying state law.

In Ground Nine, Garcia contends that trial counsel was ineffective in failing to object or to move for a mistrial when the trial court denied his request to instruct the jury on the justifiable use of non-deadly force. Garcia contends that counsel's failure to object meant that the issue was not preserved for appeal. (Doc. 6-1, p. 13). In Ground Ten, Garcia argues that trial counsel was ineffective in not objecting to an error in the jury instruction on the justifiable use of deadly force, resulting in a due process violation. (Doc. 6-1, p. 16).

Garcia's Rule 3.850 motion, filed November 30, 2015, did not raise these ineffective assistance claims. (Doc. 22, Ex. 9). Garcia moved for leave to amend his motion. (Doc. 22, Ex. 12). On July 11, 2016, the state court granted Garcia leave to amend his motion to raise any new claims for relief within 30 days. (Doc. 22, Ex. 14). On September 21, 2016, the court entered a final order denying the Rule 3.850 motion. (Doc. 22, Ex. 16). The order noted that the court had not received an amendment and that "any additional claims are procedurally barred." (*Id.*, p. 174–75).

On September 29, 2016, Garcia filed a motion for rehearing in which he stated that he timely filed his amended claims by mailing his amendment on August 3, 2016. (Doc. 22, Ex. 17).[14] The state court denied his motion for rehearing. With respect to the additional claims, the state court concluded that because it had already issued a final

---

[14] Under the mailbox rule, a prisoner is deemed to have filed a paper when he loses control over it by providing it to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

order denying the motion, Garcia's additional claims were "successive and procedurally barred." (Doc. 22, Ex. 18).

Respondent contends that Garcia's claims are barred from federal habeas review because the state court rejected them on an independent and adequate state procedural basis when Garcia presented them in his motion for rehearing. The state court applied the firmly established and regularly followed procedural rule barring successive postconviction claims. *See* Fla. R. Crim. P. 3.850(h)(2) (stating that a second or successive motion is an extraordinary pleading and that a court may dismiss such a motion if the failure of the defendant to raise the claims in an earlier motion was without good cause or was an abuse of procedure); *see also Owen v. Crosby*, 854 So. 2d 182, 187 (Fla. 2003) ("A second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion. . . . [C]laims that could have been raised in a prior postconviction motion are procedurally barred"); *Christopher v. State*, 489 So. 2d 22, 24 (Fla. 1986) (recognizing that Rule 3.850 allows a court to summarily deny a successive postconviction motion that raises new grounds).

Garcia contends that the state court incorrectly applied this procedural bar. *See Bailey*, 172 F.3d at 1302. Garcia argues that the state court's decision was wrong because he "filed a timely amended 3.850 motion within the 30-day time limit set by the postconviction court." (Doc. 6-1, pp. 13, 16). Garcia does not establish that the state

court erroneously applied the state procedural bar such that this Court can conclude the bar is not adequate to foreclose federal habeas review. Garcia alleges that, "as shown herein," he timely filed his amended motion. (*Id.*). But he did not offer any evidence to the state court or to this Court that he in fact timely filed the amendment by providing it to prison officials. Nor does Garcia identify any authority under which the state court was required to accept the allegation in his unsworn motion for rehearing as evidence that he timely filed his amendment.

Therefore, Garcia fails to identify a basis upon which this Court can determine that the state court improperly applied a state procedural bar to reject his claim.[15] The state court's application of an independent and adequate state procedural bar results in the procedural default of the claims raised in Grounds Nine and Ten.

Garcia's claims can only be considered if he establishes that either the cause and prejudice or the fundamental miscarriage of justice exception applies. Garcia does not argue that he meets the fundamental miscarriage of justice exception. But he does insist that he has established cause for the default in that the failure of his timely-filed amendment to reach the state court was a circumstance beyond his control. The Court does not find Garcia's unsupported and conclusory allegation sufficient to establish

---

[15] *See, e.g., Hagg v. State*, 591 So. 2d 614, 617 n.3 (Fla. 1992) ("Unless it appears on the face of the pleading that it was timely received by the prison officials, our opinion [adopting the prison mailbox rule discussed in *Houston*] does not mean that the court must inquire into whether every late-filed pro se petition meets the test of the mailbox rule. Upon denial of the petition, the burden is on the pro se inmate to timely assert *and prove* that the petition was delivered to prison authorities within the requisite time limits.") (emphasis added).

cause. *See McCoy v. Newsome*, 953 F.2d 1252, 1260 (11th Cir. 1992) ("[A] federal habeas corpus petitioner bears the burden of demonstrating cause for his procedural default in state court" and must "establish that an objective impediment, not of his own making" prevented him from properly bringing the claim in state court.). As Garcia does not make this showing, he fails to meet his burden of establishing cause. Garcia does not excuse the default of Grounds Nine and Ten. As a result, these claims are barred from federal habeas review.

It is therefore **ORDERED** that Garcia's Amended Petition for Writ of Habeas Corpus (Doc. 6) is **DENIED**. The **CLERK** is directed to enter judgment against Garcia and to **CLOSE** this case.

It is further **ORDERED** that Garcia is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Garcia must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Garcia has not made the requisite showing. Finally, because Garcia is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on April 16, 2021.

Kathryn Kimball Mizelle
United States District Judge